## RITENOUR v. TOWNSHIP OF DEARBORN.

1. Townships—Zoning—Approval of Ordinance—Time.

Where board of supervisors failed to appoint a county zoning commission at all and did not appoint a co-ordinating zoning committee until 3 years after defendant township adopted a zoning ordinance and township zoning board submitted such ordinance to the committee which took no action, the approval of the ordinance by the committee is conclusively presumed under the enabling statute, even though suit to restrain enforcement of the ordinance had been commenced some 2 years before committee was appointed (CL 1948, § 125.280).

2. Equity — Rehearing — Newly-Discovered Evidence — Dilatory Appointment of Co-ordinating Zoning Committee.

Where at time of commencement of suit to restrain enforcement of township zoning ordinance because not legally adopted in that no county zoning commission or co-ordinating zoning committee had been appointed by the county board of supervisors to approve such ordinance, trial court properly granted a rehearing on a showing of newly-discovered evidence that the county board had made a dilatory appointment of a committee which had not acted after its appointment (CL 1948, § 125.280).

3. Townships—Zoning Ordinance—Co-ordinating Zoning Committee.

A township zoning ordinance is not invalid by reason of the failure to submit the ordinance to a nonexistent co-ordinating zoning committee (CL 1948, § 125.280).

References for Points in Headnotes

[1–4] 58 Am Jur, Zoning, § 6.
[5, 8–10] 58 Am Jur, Zoning, §§ 21, 22.
[6–8] 58 Am Jur, Zoning, § 142.
[6–8] Zoning: Creation by statute or ordinance of restricted residence districts from which business buildings or multiple residences are excluded.  19 ALR 1395; 33 ALR 287; 38 ALR 1496; 43 ALR 668; 54 ALR 1030; 86 ALR 659; 117 ALR 1117.
[7, 8] 58 Am Jur, Zoning, § 140.

4. SAME—ZONING ORDINANCE—CO-ORDINATING ZONING COMMITTEE.

Defect in adoption of township zoning ordinance, if existent, by reason of failure to submit it to a nonexistent co-ordinating zoning committee, was cured by submission to such committee after its appointment (CL 1948, § 125.280).

5. SAME—REASONABLENESS OF ZONING ORDINANCE.

The reasonableness of a township zoning ordinance must be judged by its application to the particular circumstances of the case and the test of its legality depends upon its reasonableness under those circumstances. '

6. SAME—ZONING ORDINANCE—RESIDENCE USE OF BUSINESS LOTS.

New township zoning ordinance, adopted after expiration of restrictions applicable to plaintiffs' vacant 4 interior lots 20' x 100' and 1 corner lot 32.5' x 100.8' and fronting on a main arterial highway, which had been purchased by plaintiffs while plat and zone restrictions had been in force limiting use to business purposes, and which new zoning ordinance rezoned the property to use for one-family residences only with specific limitations as to side-yard and ground-floor area making it impossible to erect a residential dwelling on an individual lot, *held,* unreasonable as applied to plaintiffs' lots, there being no requisite relation to public health, safety or general welfare.

7. SAME—ZONING ORDINANCE—DEPRECIATION IN VALUE.

While depreciation in value is not a definite yardstick by which to measure the reasonableness of a township zoning ordinance, the Supreme Court will give it consideration, especially when the ordinance destroys most of the value of the property involved.

8. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—PROPERTY VALUES.

A zoning ordinance which renders property almost worthless is unreasonable and confiscatory, and therefore illegal.

9. SAME—REASONABLENESS OF ZONING ORDINANCE.

In determining the reasonableness of a zoning ordinance, each case must be determined upon its own facts.

10. TOWNSHIPS—ZONING ORDINANCE—ADDITION OF PARTIES.

Determination as to merits of petition to add, as a party plaintiff in a suit to enjoin enforcement of a township zoning ordinance, the owner of a 20-foot lot in same subdivision as that in which plaintiffs owned similar sized lots is not made since each zoning case stands by itself and reasonableness

of the ordinance judged by circumstances of each particular case.

Appeal from Wayne; O'Hara (Chester P.), J. Submitted October 6, 1949. (Docket No. 39, Calendar No. 44,464.) Decided December 7, 1949.

Bill by Leys R. Ritenour and wife against Township of Dearborn to enjoin the enforcement of a zoning ordinance. Township of Northville intervened. Decree for plaintiffs. Defendant appeals. Plaintiffs cross-appeal. Affirmed.

*John J. Fish,* for plaintiffs.

*Jesse W. Bollinger,* for defendant.

*Poole, Warren & Littell* and *D. Harper Britton* (*Harry N. Deyo,* of counsel), for intervenor.

BOYLES, J. Plaintiffs filed a bill of complaint in the circuit court for the county of Wayne in chancery seeking to enjoin the defendant township from enforcing a certain zoning ordinance of Dearborn township in said county, as applied to certain lots owned by them in said township, and to have the ordinance declared invalid in its entirety because of a claimed noncompliance in its adoption with the requirements of PA 1943, No 184, § 10 (CL 1948, § 125.280 [Stat Ann 1949 Rev § 5.2963(10)]). Plaintiffs claim the right to use their property for business purposes. The defendant township claims that the use is restricted to one-family residence purposes only. The trial court held that the ordinance had been legally adopted, but that it was unreasonable and confiscatory as applied to the lots owned by the plaintiffs and on that ground granted the relief prayed for. The township appeals from that

part of the decree which holds the ordinance unreasonable, and plaintiffs cross-appeal from that part of the decree which holds that the ordinance was legally adopted.

On this appeal the first question essential to decision is whether the ordinance is void in its entirety by reason of failure to comply with statutory requirements, in its adoption in 1945. PA 1943, No 184, § 10,* *supra,* requires that the township zoning board shall submit a proposed zoning ordinance to the county zoning commission for approval, if one has been appointed by the board of supervisors; and if none has been so appointed, then to a co-ordinating zoning committee of the county appointed by said board to co-ordinate proposed township zoning ordinances. At the time the ordinance in question was adopted in 1945 no county zoning commission or co-ordinating committee had been appointed and none was appointed until May 4, 1948, more than 3 years after the zoning ordinance in question was adopted, 2 years after the bill of complaint in this case was filed, and shortly before the case was heard. However, shortly after such co-ordinating committee had been appointed in May, 1948, the defendant township submitted to it the ordinance in question, it was not disapproved, and the approval of the ordinance by the co-ordinating committee must be conclusively presumed.

"The approval of such zoning commission or co-ordinating zoning committee shall be conclusively presumed unless such commission or committee shall, within 30 days of its receipt, have notified the township clerk of its disapproval." PA 1943, No 184, § 10, *supra.*

The question of the validity of the ordinance, under the above circumstances, was submitted to the

* PA 1949, No 310, did not amend said section.

circuit judge, who at first held the ordinance invalid. Later, on a showing of newly-discovered evidence, the court properly granted a rehearing and allowed the township to show the facts regarding the dilatory appointment of the co-ordinating committee and its inaction when the ordinance was submitted to it for approval. On that basis, the trial court held that the inability of the township zoning board to submit the ordinance to a nonexistent zoning commission or co-ordinating committee prior to its adoption was not a fatal defect.

It certainly was not the intention of the legislature to prevent any and all township zoning under the township zoning act until such time as the board of supervisors took action and appointed a committee. Otherwise, the board of supervisors merely by such inaction could prevent the adoption of all township zoning ordinances in their respective counties where the act had been adopted. Any and all township zoning ordinances adopted in Wayne county pursuant to said Act No 184, *supra,* between its effective date in 1943 and the appointment of the co-ordinating committee in 1948, would be made null and void solely by such inaction. This might, and in all probability would, create very serious situations which might be disastrous both to the public and to private individuals. We are in accord with the conclusion reached by the trial court, that the ordinance is not invalid by reason of the failure to submit it to a nonexistent co-ordinating zoning committee. The defect, in any event, was cured by the subsequent action. A somewhat analogous situation came before the Court in *Case* v. *Liquor Control Commission,* 314 Mich 632, where the question was raised whether the liquor control commission was prevented from revoking a license because no complaint had been filed and hearing held thereon by a board of hearing examiners, to be appointed by the

governor, during the time (approximately one year) when no such board had been appointed. The Court said, p 642:

"We further hold that until the board is appointed, the commission retains its full power to act, and that the revocation was proper. We are not in accord with the claim that the license could not be revoked without a board when there was no such board in existence. The action by the commission is not suspended until after a board is created. * * * Looking at the case realistically, it would mean that during the period of over a year since section 5a, *supra*,* became effective, there could be no license revoked irrespective of the conduct of the licensees. * * * We hold that the action of the commission prior to the appointment of the board is legal and proper."

The second controlling issue is whether the ordinance is unreasonable as applied to plaintiffs' property, under the circumstances of this case. Plaintiffs are the owners of lots 121, 123, 124, 125 and 126 of Belmont Park subdivision No 1, in Dearborn township, Wayne county. These lots front on Ford Road, between McMillan and DaCosta avenues. Each of said lots has a frontage of 20 feet on Ford Road and a depth of 100 feet, with the exception of lot 121, a corner lot, which has a frontage of 32.5 feet on Ford Road and a depth of 100.8 feet on the Da-Costa avenue side. Between said lots 121 and 123 on Ford Road is lot 122 with a 20-foot frontage, which plaintiffs do not own. Thus plaintiffs' lots 123, 124, 125 and 126 have a continuous frontage of 80 feet on Ford Road, and lot 121 has a separate frontage of 32.5 feet. All of said lots are vacant. These lots were originally platted in 1924 as business lots and were then restricted "for business pur-

* PA 1933 (Ex Sess), No 8, § 5a, as added by PA 1945, No 133 (CL 1948, § 436.5a [Stat Ann 1947 Cum Supp § 18.975(1)]).

poses" only. Those restrictions expired in January, 1945, according to a limitation expressed in the deeds. Immediately adjacent to these lots at the rear is a 20-foot alley separating them from residential property. The lots here in question were purchased by plaintiffs in 1942 for business purposes, at a time when they were thus restricted by covenant to use for business purposes only. Also, at the time plaintiffs purchased these lots in 1942 they were zoned for business use only, in accordance with a zoning ordinance of the township adopted in 1940.

In 1945, the township adopted the zoning ordinance now in question, repealing the 1940 ordinance. It places the lots here in question in a zone designated as R-1-A, and restricts the use of lots in said zone to one-family dwellings with definite restrictions as to the erection and use of any residential buildings thereon. Among such restrictions are the following:

Section 3.19 of the ordinance requires one off-street parking space for each one-family dwelling. Section 4.04 requires that each one-family dwelling be located on a lot of not less than 5,000 square feet and an average width of not less than 50 feet. Section 4.05 requires that each one-family dwelling shall not cover more than 30 per cent. of the area of such lot. Section 4.06 provides that each lot shall have a front yard not less than 25 feet in depth. Section 4.07 provides that lots of 40 feet or less in width, in a previously adopted plat, shall have 2 side yards, each not less than 4 feet in width and an aggregate width of not less than 12 feet. Section 4.08 requires each lot to have a rear yard of a depth not less than 35 feet. Section 4.09 provides that no dwelling shall be erected in a one-family residential district having a ground floor area of less than 1,200 square feet if one-story, or 800 square feet if one-

and-a-half- or 2-stories, with an aggregate livable floor area equal to 1,200 square feet.

Under these requirements, any dwelling on a 20-foot lot could not exceed 8 feet in width. It is plainly apparent that a residential dwelling could not be erected on a lot with a 20-foot street frontage, and comply with the foregoing restrictions. To that extent, at least, the ordinance is unreasonable. It is equally unreasonable as applied to lot 121, the corner lot owned by plaintiffs, with a frontage of 32½ feet on Ford Road. Is the ordinance made any more reasonable as applied to the instant case, because of the fact that plaintiffs own 4 contiguous lots, each with a frontage of 20 feet on Ford Road, and which have a continuous frontage of 80 feet on Ford Road? In that connection, the reasonableness of the ordinance must be judged by its application to the particular circumstances of the case. The test of its legality depends upon its reasonableness under those circumstances.

The dimensions of each of plaintiffs' lots 123, 124, 125 and 126 are 20x100 feet. With a frontage of 80 feet on Ford Road and a depth of 100 feet, it is obvious that in order to comply with section 4.04 of the ordinance as to size and width of a lot required for a dwelling in zone R-1-A, plaintiffs could not erect more than one dwelling on the 4 lots, except by violating the ordinance. Two contiguous 20-foot lots would not meet the requirement of section 4.04 of the ordinance. If plaintiffs should dispose of 2 of said lots to the same grantee, neither the plaintiffs nor their grantee could use their property for residential purposes; nor could either of them, under the present zoning ordinance, use their property for any business or commercial purposes under section 4.01 of the ordinance. The record establishes that Ford Road is a main arterial highway, that the property in question is not suitable for residence

purposes and has little value, if any, for such use; that nearby lots in the township are zoned for business or for residential use permitting incidental business. The ordinance as applied to plaintiffs' property does not bear that relation to public health, safety and general welfare requisite to its validity and it is unreasonable as applied to the situation in the case at bar.

In addition to the foregoing reasons why the ordinance is unreasonable as applied to plaintiffs' property, plaintiffs purchased these lots at a time when they were restricted to use for business purposes both by restrictive covenants and the zoning ordinance then in effect. They were purchased at that time for business use. Even with the erection of one dwelling, with the ordinance requiring a 50-foot frontage on Ford Road, plaintiffs would still have 30 feet of frontage on Ford Road which could not be used either for a dwelling or for business purposes. They cannot be required to procure additional contiguous frontage to permit full utilization of their property. *Faucher* v. *Grosse Ile Township Building Inspector*, 321 Mich 193. The requirements of the ordinance are unreasonable as applied to plaintiffs' lots. *Oschin* v. *Township of Redford*, 315 Mich 359.

While depreciation in value is not a definite yardstick by which to measure the reasonableness of a zoning ordinance, the Court will give it consideration. The record here shows that most of the value of plaintiffs' property has been destroyed by the change in its use required by the ordinance.

"A zoning ordinance which renders property almost worthless is unreasonable and confiscatory, and therefore illegal.

"In determining whether the invasion of property rights under a purported police power, is unreasonable and confiscatory, the extent to which property

values are diminished by the provisions of a zoning ordinance must be given consideration." *Ervin Acceptance Co.* v. *City of Ann Arbor* (syllabi), 322 Mich 404.

Since the record was filed in this Court counsel for the appellees has filed here a petition for leave to add as a party plaintiff one Ann Bell Greer, alleged to be the owner of a single lot in said subdivision, with a frontage of 20 feet on Ford Road. The petition is opposed by appellant. Its purpose is to obtain an adjudication by this Court as to the reasonableness of the zoning ordinance in question as applied to the property of said party.

"In determining the reasonableness of a zoning ordinance, each case must be determined upon its own facts." *Moreland* v. *Armstrong* (syllabus), 297 Mich 32.

"Each zoning case, as a rule, stands by itself and its reasonableness must be judged by the circumstances in each particular case." *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich 31.

To the same effect, see *Senefsky* v. *City of Huntington Woods,* 307 Mich 728 (149 ALR 1433); *Pringle* v. *Shevnock,* 309 Mich 179; *Fass* v. *City of Highland Park,* 321 Mich 156; *Ervin Acceptance Co.* v. *City of Ann Arbor, supra.*

Whether or not the conclusions reached in this opinion apply to the property of Ann Bell Greer is outside the issue. The motion is denied.

The decree that the ordinance was legally adopted, that it is unreasonable as applied to the circumstances of the case, and enjoining its enforcement as to plaintiffs' property is affirmed, with costs to plaintiffs.

SHARPE, C. J., and BUSHNELL, REID, NORTH, and BUTZEL, JJ., concurred with BOYLES, J. DETHMERS and CARR, JJ., concurred in the result.