JOHNSON CONSTRUCTION COMPANY
*v.* WHITE LAKE TOWNSHIP.

1. MUNICIPAL CORPORATIONS — ORDINANCES — PRESUMPTION OF VALIDITY.

A strong presumption exists in favor of the validity and constitutionality of local ordinances passed under statutory authorization to promote the health, morals, safety and welfare of the community.

2. TOWNSHIPS—BUILDING CODE—PREFABRICATED HOUSES—ROOF CONSTRUCTION—CEILING—STUDDING.

Evidence presented in mandamus proceeding to compel issuance of building permit for prefabricated houses notwithstanding the plans therefor did not comply with township building code in that a metal brace and center partition at the joinder of the rafters at the roof peak were substituted in place of ceiling joists or collar beams and 2″ x 3″ studding was substituted for 2″ x 4″ in interior bearing partition, as required by township building code, *held*, sufficient to support trial judge's conclusion that the disputed provisions of the ordinance

REFERENCES FOR POINTS IN HEADNOTES
[1] 37 Am Jur, Municipal Corporations §§ 188, 189.
[2] 9 Am Jur, Buildings § 3.
[3] 34 Am Jur, Mandamus § 81 *et seq.*

bore no relation to the health, morals, safety or welfare of the community as it was required to do by the enabling act (CL 1948 and CLS 1956, § 125.351 *et seq.*; White Lake Township Building Code).

3. Mandamus—Ordinance—Police Power.

A writ of mandamus may serve as a remedy where evidence clearly shows the unreasonableness of an ordinance enacted under the police power of the State.

4. Townships—Building Code—Chimneys—Roof Construction—Studding—Mandamus—Evidence.

Order requiring issuance of writ of mandamus to compel township authorities to issue building permit to plaintiff for erection of prefabricated houses upon compliance with provisions of township building code with respect to placing chimney upon a foundation instead of supporting it from rafters, and, notwithstanding noncompliance with provisions as to roof construction and size of studding in interior bearing partitions, is not disturbed, under evidence presented (CL 1948 and CLS 1956, § 125.351 *et seq.*; White Lake Township Building Code).

5. Costs—Public Question—Building Permit.

No costs are allowed in mandamus proceeding against township and its officers to compel issuance of building permit for construction of prefabricated houses, notwithstanding noncompliance with township building code, a public question being involved (CL 1948 and CLS 1956, § 125.351 *et seq.*; White Lake Township Building Code).

Appeal from Oakland; Black (Eugene F.), J., presiding. Submitted July 9, 1957. (Calendar No. 46,-878.) Decided March 5, 1958.

Mandamus by Johnson Construction Company, a Michigan corporation against the Township of White Lake, a municipal corporation, its supervisor, building inspector and members of its township board, to compel issuance of building permit. Judgment for plaintiff granting writ conditionally. Defendants appeal. Affirmed.

*John W. Bell,* for plaintiff.

*Clarence L. Smith,* for defendants.

Edwards, J. Plaintiff sought to build 37 prefabri-cated houses of the National Homes Company in White Lake township. Plaintiff's application for a building permit was refused by the building inspector of White Lake township because its plans failed to comply with the township building code in 3 respects:

(1) The substitution of a metal "Z" brace and a center partition at the joinder of the rafters at the roof peak in place of ceiling joists or collar beams;

(2) The substitution of 2″ x 3″ studding for 2″ x 4″ studding for the interior bearing partition referred to;

(3) The substitution of a chimney suspended from the rafters instead of a chimney supported by a foundation.

Plaintiff, claiming equal or greater strength and safety as to the disputed features, sought a writ of mandamus to compel the township of White Lake to issue the building permit.

At trial of this matter, appellant agreed to amend its plans to provide footings for the chimney so as to comply with the code requirement. As to the other 2 issues, the circuit judge heard the testimony, viewed a house constructed according to plaintiff's plans and held that the 2 provisions of the building ordinance in their relationship to plaintiff's plans bore no reasonable relationship to the health, safety and welfare of the community, and, hence, were unconstitutional. He, therefore, issued the writ prayed for, conditioned on plaintiff's prior amendment of the application to comply with the chimney provisions of the code.

The house involved had overall measurements of 32-1/2′ x 24′. It had a gabled roof with a very low pitch, with the ridge running the length of the house. There was only 1 interior partition which bore weight

and that ran the length of the house, reinforcing the roof joists.

For this partition, National Homes provided 2″ x 3″ studding, in place of the 2″ x 4″ required by the code.

There were no ceiling joists or collar beams provided in the plans—the rooms were open up to the ceiling furred on the roof joists. In place of ceiling joists or collar beams, National Homes provided a metal joist hangar.

Plaintiff presented as witnesses 2 architects who testified that in their opinion the 2 disputed building features as applied gave strength and durability equal to or greater than the conventional features required by the code.

The only contrary testimony found in the record is that of the supervisor of White Lake township who testified he had worked as a carpenter. He testified "collar beams going right across gives a building more rigidness than the way this is built."

The trial judge in his opinion described the problem thus:

"The court, by consent of counsel and in the presence of representatives of plaintiff and defendants respectively, carefully viewed and examined the interior and exterior of a house recently constructed according to the plans proffered by plaintiff in support of its application for permit. The house, of small 1-story basementless nature, engages a new principle of tying the longitudinal outer walls of the house together by means of a low-pitched roof supported by 2″ by 6″ rafters centered 16 inches apart and tied end-to-end at the ridge line with metal 'Z' fittings; by further fastening the rafters together at ridge line through utilization of spiked down metal ties extending beneath the shingles across and over each end-to-end rafter joint, and by supporting

the rafter or ceiling structure, from 1 end of the house to the other longitudinally, with a vertical bearing partition made up of 2″ by 3″ studding constructed on 16-inch centers.

"The question—essentially one of fact—is whether this type of construction is equal to or better, in terms of strength, than conventional wood construction as required by the ordinance."

From the testimony and from personal inspection he entered the following finding of fact:

"A house constructed in accordance with plaintiff's application would be somewhat stronger than 1 of identical dimensions and pitch constructed in the usual way with collar beams nailed from rafter to rafter per section 10 of the ordinance but without the presently proposed end-to-end supporting partition. The actual difference between the 2 types of construction—safety aside for the moment—is that the older method costs more and the new less. The factor is not sufficient to justify reasonableness of the township ordinance as applied here since the court must concern itself with the polar issue of structural safety."

The township building code was authorized by statute. PA 1943, No 185, as amended by PA 1951, No 92 (CL 1948 and CLS 1956, § 125.351 *et seq.* [Stat Ann 1949 Rev and Stat Ann 1955 Cum Supp § 5.2973(1) *et seq.*]).

The purpose of the enabling act is clearly spelled out:

"The provisions of any such ordinance shall be made with reasonable consideration and in accordance with a plan designed to lessen congestion on the public streets, to promote the public health, safety, morals and general welfare, and the safety, protection and sanitation of such dwellings, buildings and,

structures, and with reasonable consideration for the provisions of any existing rural zoning ordinance in effect in the township." CLS 1956, § 125.353 (Stat Ann 1955 Cum Supp § 5.2973[3]).

There is a strong presumption in favor of the validity and constitutionality of local ordinances passed under statutory authorization to promote the health, morals, safety and welfare of the community. *Highland Oil Corporation* v. *City of Lathrup Village,* 349 Mich 650; *Northwood Properties Company* v. *Royal Oak City Inspector,* 325 Mich 419; *Austin* v. *Older,* 283 Mich 667.

The trial judge. was, however, confronted by strong evidence favoring plaintiff's contention that the disputed provisions of this ordinance bore no reasonable relationship to the health, morals, safety or welfare of the community. The testimony presented in support of defendant's position was decidedly weak.

The trial judge held the testimony presented by plaintiff sufficient to overcome the presumption favoring the ordinance to which we have referred.

Where evidence clearly shows the unreasonableness of an ordinance (or provisions thereof) enacted under the police power of the State, a writ of mandamus may serve as remedy. *Senefsky* v. *City of Huntington Woods,* 307 Mich 728 (149 ALR 1433); *Faucher* v. *Grosse Ile Township Building Inspector,* 321 Mich 193.

In this instance plaintiff, of course, had no right to the writ until it had amended to comply with the provisions of the code as to the chimney. However, under the court's disposition of the matter, the writ was not issued until such amendment had been made.

Affirmed. No costs, a public question being involved.

DETHMERS, C. J., and CARR, KELLY, SMITH, and VOELKER, JJ., concurred.

BLACK, J., did not sit.

KAVANAGH, J., took no part in the decision of this case.